UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

SUPPRESSED

**FILED**

FEB - 4 2026

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

▮▮▮▮▮▮▮

MONARCH SACHDEV,

▮▮▮▮▮▮▮

    Defendants.

4:26-cr-00048 JMD/SRW

4:26-mj-129

## INDICTMENT

### COUNT 1

**Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)**

#### The Conspiracy

1. Beginning no later than in or around March 2024, and continuing through at least in or around December 2025, in the Eastern District of Missouri and elsewhere, the defendants,

**MONARCH SACHDEV,**
and
▮▮▮▮▮▮▮

voluntarily and intentionally conspired, combined, and agreed with each other and others, known and unknown to the Grand Jury, to commit the following offense against the United States:

(a) Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of

1

interstate electronic communications, in violation of Title 18, United States Code, Sections 1343.

All in violation of Title 18, United States Code, Section 1349.

### Object of the Conspiracy

2. The primary purpose of the scheme and artifice to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud was for the conspirators, including the defendants, to defraud elderly victims throughout the United States, including in the Eastern District of Missouri.

### Manner and Means

3. The scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud were carried out by the conspirators in the following manner:

4. Conspirators operating from a call center outside the United States contacted elderly victims through telephone calls and electronic messages and made false representations in order to induce victims to liquidate their savings and retirements funds to purchase gold bars and gold coins, which the victims then gave to couriers working on behalf of the conspiracy. Conspirators sometimes instructed victims to withdraw currency from their accounts and give the currency to couriers. Conspirators often convinced victims that the couriers were representatives of the United States government who were intending to safeguard the victims' money.

5. Conspirators told victims that their financial accounts had been compromised, and that the victims needed to transfer funds to conspirators in order to maintain account security, transfers that sometimes took the form of liquidating accounts in order to purchase gold. Conspirators then directed couriers working on behalf of the conspiracy to meet with victims in person in order to retrieve the gold or currency. Conspirators instructed couriers to schedule travel plans, which often included booking flights to the towns where victims were located.

6. Conspirators provided couriers with detailed information regarding the victims, including names and residential addresses. Conspirators gave both the victims and the couriers a password to exchange during the gold and currency pickups, steps which were intended to provide the victims with a false sense of security regarding the transaction.

7. Once the courier retrieved gold or currency from a victim, the courier delivered the stolen currency or gold following the direction of the call center.

8. Once couriers successfully handed off the stolen gold or currency, they were paid a percentage of the total amount of money they had handled, sometimes through an electronic payment platform, such as Zelle.

9. Defendants ▇▇▇ and ▇▇▇ worked as couriers on behalf of the conspiracy and travelled to victims' residences in order to retrieve gold or currency from the victims. Two of these victims were located in the Eastern District of Missouri.

10. Defendant Monarch Sachdev ("Sachdev") both worked as a courier himself and managed the gold or currency pickups of other couriers, including ▇▇▇ and ▇▇▇ among others. In his capacity as a manager in the conspiracy, Sachdev maintained records of payments to couriers and provided instructions to couriers on the location of pickups, descriptions of victims, as well as passwords to use during the pickups. Sachdev also provided instructions to couriers regarding their transfers of the stolen gold bars and currency to other conspirators, including location and contact information.

11. Conspirators, including ▇▇▇ ▇▇▇ and Sachdev communicated about the scheme with each other through various means, including electronic messages exchanged via WhatsApp sent using interstate wire transmissions.

12. ▇▇▇ worked as a courier in pickups from victims in locations including St. Louis, MO, and Cedar Hill, MO. ▇▇▇ worked as a courier in pickups from victims in locations

including Dallas, TX, Lindale, TX, Orrick, MO, Mount Pleasant, SC, Bonita Springs, FL, and Norman, OK. Sachdev managed pickups in locations including Houston, TX, Canon City, CO, Quincy, IL, and St. Louis, MO.

13. Using the method described above, conspirators, including Sachdev, ▮ and ▮ defrauded victims in numerous states in an amount exceeding $8,000,000.00.

### Defrauding Victim BK in the Eastern District of Missouri

14. Sometime prior to September 18, 2024, conspirators contacted Victim BK, a 71-year-old resident of Cedar Hill, Missouri, in the Eastern District of Missouri. During the multiple conversations that conspirators had with BK, the conspirators falsely advised victim BK that she had been sent a payment via PayPal in error, and that victim BK would have to pay income taxes on the payment unless victim BK purchased $200,000 in gold.

15. Conspirators further instructed victim BK that an individual would come to her residence to retrieve the gold once she had purchased it.

16. As part of his role in the conspiracy, on September 18, 2024, acting on instructions from Sachdev transmitted via WhatsApp, ▮ travelled to Cedar Hill, Missouri in order to retrieve the gold from victim BK.

17. After ▮ completed the pickup from victim BK, ▮ was intercepted by law enforcement agents.

All in violation of Title 18, United States Code, Section 1349.

### FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, or conspiracy to commit such offense, as set forth in Count 1, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from

proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation.

3. If any of the property described above, as a result of any act or omission of the Defendant(s):

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

FOREPERSON

THOMAS C. ALBUS
United States Attorney

Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney